CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
8/20/2018
JULIA C. DUDLEY, CLERK
BY: s/ SUSAN MOODY
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| ANDREA W., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:17-cv-42 |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | By: Hon. Robert S. Ballou |
| Acting Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Andrea W. ("Andrea")[1] filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Andrea alleges that the administrative law judge ("ALJ"): (1) erred in failing to find that she suffered from greater than moderate limitations in concentration, persistence, or pace, (2) posed an insufficient hypothetical question to the vocational expert, and (3) failed to develop the record. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Andrea's Motion for Summary Judgment (Dkt. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 13).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Andrea failed to demonstrate that she was disabled

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

under the Act.² <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Andrea protectively filed for SSI on February 26, 2013, claiming that her disability began on February 13, 2013.³ R. 170–77. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 77, 95. On February 18, 2016, ALJ Marc Mates held an administrative hearing to consider Andrea's disability claim. R. 31–62. Andrea was represented by an attorney at the hearing, which included testimony from Andrea and vocational expert Robert Jackson. <u>Id.</u>

On March 24, 2016, the ALJ entered his decision analyzing Andrea's claim under the familiar five-step process,⁴ and denying Andrea's claim for disability. R. 12–25. The ALJ found

---

² The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

³ Although Andrea alleges disability beginning in 2004, she filed for SSI in January 2013. The relevant period for evaluating disability therefore begins in February 2013. <u>See</u> 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. . . . [W]e cannot pay you for the month in which your application is filed or any months before that month.").

⁴ The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant

that Andrea suffered from the severe impairments of cerebrovascular accident late effects, migraines, obesity, organic mental disorder, mood disorder, anxiety disorder, and history of substance abuse. R. 14. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 15–18. The ALJ further found that Andrea retained the RFC to perform a range of light work, and she can: (1) lift and carry 10 pounds frequently and 20 pounds occasionally; (2) sit, stand, and walk six hours in an eight-hour workday; (3) never climb ladders, ropes, or scaffolds; (4) occasionally balance and stoop; (5) never be exposed to vibrations and hazards such as unprotected heights or dangerous moving machinery; (6) perform simple, routine, repetitive tasks involving no strict production quotas and no significant reading and writing; and (7) sustain attention for two-hour segments, interact with coworkers and supervisors on a frequent basis in a well-spaced environment with no more than occasional public contact, and respond appropriately to infrequent and gradual change. R. 18.

The ALJ determined that Andrea had no past relevant work. R. 23. However, the ALJ determined that Andrea could perform jobs that exist in significant numbers in the national economy, such as a cleaner. R. 24. Thus, the ALJ concluded that Andrea was not disabled. Id.

Andrea appealed the ALJ's decision to the Appeals Council, but her request for review was denied. R. 1–4. This appeal followed.

---

disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

Andrea argues that the ALJ erred in failing to find that she suffered from greater than moderate limitations in concentration, persistence or pace, posed an insufficient hypothetical question to the vocational expert, and failed to develop the record.

**Relevant Medical Evidence**

Andea suffered a brain aneurysm and a stroke on February 13, 2013. R. 297. A CT scan "showed extensive subarachnoid hemorrhage with intraventricular extension" from "a small internal carotid artery aneurysm." Id. During Andrea's 23-day stay in the hospital, she underwent an aneurysm clipping procedure, a central line placement, a brain shunt, and an external ventricular drain placement and replacement. R. 540, 836. Andrea was discharged on March 8, 2013, and was instructed to remain under the care of her family with constant supervision and to attend outpatient occupational, speech, and physical therapy. R. 541.

Andrea returned to the hospital on March 18, 2013, reporting blurred vision and daily headaches that are relieved by Lortab. R. 836. During the examination, Andrea explained that she no longer had blurred vision. R. 837. Michael R. Cook, M.D., admitted Andrea into the intensive care unit. Id. Three days later, Andrea received a second brain shunt. R. 844.

On April 3, 2013, Andrea saw Jordan Watkins, PA-C, for a postoperative evaluation. R. 877. Andrea's symptoms were "much improved (mild occasional headache and major improvement in vision . . .) compared to preoperative symptoms. Post operative pain has been mild." Id.

Andrea began speech and language therapy on April 11, 2013, "to address deficits with memory, expression, word retrieval, cognition, and reading." R. 883. Andrea was discharged on June 25, 2013 after four sessions due to poor attendance and failure to return calls to schedule

appointments. R. 883. Yvonne Staton, M.S., explained that Andrea made mild gains during therapy and she: (1) could communicate in simple sentences and engage in mild conversation; (2) "continued to display mild deficits with word retrieval and completion of higher level language tasks"; (3) could recall ten pictures with 100 percent accuracy following a 20-minute time lapse; (4) made gains in cognitive skills by achieving a 75 percent or greater accuracy on tasks; and (5) demonstrated good reading comprehension of broad details, "but often had to re-read the passage to retain specific information." R. 883.

On July 17, 2014, Andrea underwent a diagnostic angiogram after not receiving postoperative treatment for her "clipping of ruptured left P-comm aneurysm." R. 1364. The angiogram returned normal findings, with "[n]o evidence of aneurysms, aVF or AVM." Id.

Andrea reported depression symptoms to Laura Mann, FNP, on December 12, 2014. R. 1523. A mental status examination showed that Andrea had clear and appropriate speech, logical thought process, good insight, fair judgment, and orientation to person, place, and time. R. 1524.

On January 7, 2016, Andrea returned to Ms. Mann, and was found to have intact language, normal eye contact, pleasant mood, fluent speech, and orientation to person, place, and time. R. 1539.

**Medical Opinions**

Andrea saw E. Wayne Sloop, Ph.D., on August 15, 2013 for a consultative psychological evaluation. R. 921–27. Andrea explained that since her stroke and aneurysm, she becomes confused easily, has memory problems, and has word retrieval problems. R. 922. Dr. Sloop explained that Andrea's complaints were "commensurate with the experience of a brain hemorrhage and aneurysm." R. 924. Andrea told Dr. Sloop that she cooks meals occasionally,

walks to a nearby store, listens to music, watches movies, visits with friends, browses the internet, shops, and does household chores such as laundry, dishwashing, dusting, mopping, and sweeping. Id. Dr. Sloop explained that Andrea "is frequently inattentive and is easily distracted by a cell phone she has with her." R. 923.

>   Dr. Sloop conducted a mental status exam and found that Andrea:
>
>> is oriented to person, place, and time. She has impaired concentration and attentional abilities. Her concentration impairment is variable but is of moderate to severe degree when it occurs. Inattentiveness is frequent and is also moderate to severe. Her immediate memory is poor (WAIS-IV Digit Span subtest Scaled Score = 5), recent memory is deficient (recalls one of three words after a five-minute delay), and her remote memory is poor as she has considerable difficulty recalling past dates as well as difficulty recalling the sequence of events from the past. Her judgment is fair.
>>
>> Though she has problems with concentration and attention, she nevertheless achieves a score of 26 of possible 30 points on the MMSE-2. She is able to repeat three words immediately after they are presented to her but after a five-minute delay recalls only one of the three words. She performs five operations in the serial sevens task, does so somewhat slowly but makes only one error while performing these five operations. She is able to repeat a simple sentence and she follows an oral three-step command without difficulty. She is able to follow a one-step written command, write a simple sentence, and adequately reproduce a simple geometric drawing.

R. 925.

Dr. Sloop explained that Andrea is easily distracted and her problems with concentration and attention "require frequent re-direction." Id. Dr. Sloop found that Andrea's verbal comprehension, working memory, processing speed, and visual working memory were in the "borderline range," while her perceptual reasoning, full scale IQ score of 67, auditory memory,

6

visual memory, immediate memory, and delayed memory were in the "extremely low" range. R. 925–26. Dr. Sloop noted that Andrea continuously used her cell phone during the WMS-IV exam, despite his repeated requests for her to stop. R. 926.

Dr. Sloop diagnosed cognitive disorder affecting intelligence and memory. Id. Dr. Sloop explained that Andrea: (1) cannot perform detailed and complex tasks due to low intelligence and memory problems; (2) is likely to have problems performing simple and repetitive tasks due to poor attention and concentration; (3) will likely require fairly close supervision to perform simple and repetitive tasks; (4) will have problems dealing with work-related stress due to poor attention and concentration; (5) can converse and work with coworkers and supervisors reasonably well; (6) cannot work in a noisy, crowded environment; and (7) is only able to work part-time. R. 927. Dr. Sloop stated that because his evaluation occurred five months after Andrea's stroke and aneurysm, it is possible to assume that she will continue to recover her intellectual and memory capabilities over time. R. 926–27. The ALJ gave Dr. Sloop's opinion little weight.

On September 5, 2013, at the initial level of administrative review, Howard S. Leizer, Ph.D., found that Andrea had moderate limitations in concentration, persistence, or pace. R. 69. Dr. Leizer found that Andrea's ability to remember locations and work-like procedures and ability to understand, remember, and execute very short, simple instructions were not significantly limited by her moderate limitations in concentration, persistence, or pace. R. 73. Dr. Leizer found that Andrea's subjective allegations were not fully credible. Dr. Leizer disagreed with the conclusions of Dr. Sloop and found that Andrea maintained reasonably good concentration. In fact, Dr. Leiser concluded that Dr. Sloop's consultative examination actually

7

helped to document Andrea's ability to engage in simple, routine tasks. Finally, Dr. Leiser found Andrea able to maintain regular work attendance. R. 73–74.

On August 25, 2014, at the reconsideration level of administrative review, Jo McClain, PsyD, agreed with Dr. Leizer that Andrea had moderate limitations in concentration, persistence, or pace, but that her ability to remember locations and work-like procedures and ability to understand, remember, and execute very short, simple instructions were not significantly limited. R. 87, 91. Dr. McClain agreed with Dr. Leizer that Andrea's concentration was reasonably good. R. 91. Dr. McClain explained that Andrea's mental status "is no more impaired, and possibly less impaired," that it had been at the initial level of administrative review. R. 92. The ALJ gave the opinions of Drs. Leizer and McClain partial weight, so as to provide Andrea mental limitations that gave her the "maximum benefit." R. 23.

**Concentration, Persistence, or Pace**

Andrea argues that the ALJ erred by failing to find that she suffered from greater than moderate difficulties in concentration, persistence, or pace. Additionally, Andrea asserts that the hypothetical question posed to the vocational expert at the administrative hearing was insufficient.

At Step Three, the ALJ found that Andrea suffered from moderate limitations in concentration, persistence, or pace. Accordingly, the ALJ explained that Andrea:

> can perform, simple, routine, repetitive tasks involving no strict production quotas and no significant reading and writing. She can sustain attention toward such tasks for 2-hour segments; interact with coworkers and supervisors on a frequent basis in a well-spaced environment, with no more than occasional public contact; and respond appropriately to infrequent and gradual change.

R. 18.

In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, or pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." 780 F.3d 632, 638 (4th Cir. 2015); see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. 2005) (holding that a "limitation to simple, unskilled work does not necessarily" accommodate a person's difficulty in concentrating on or persisting in a task, or maintaining the pace required to complete a task)).

In Mascio, the Fourth Circuit found that the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC. Mascio, 780 F.3d at 638. The court noted, however, that the ALJ may find that the concentration, persistence, or pace limitation would not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. Id.; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D. W. Va. June 16, 2015).

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. See Mascio, 780 F.3d at 638. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized in Monroe v. Colvin, where the court found that the ALJ must provide a sound basis for his ruling,

9

including discussing what evidence he found credible and specifically apply the law to the record. 826 F.3d 176, 189 (4th Cir. 2016).

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, or pace by restricting the claimant to simple, routine tasks or unskilled work. 631 F.3d 1176, 1180 (11th Cir. 2011). However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at *7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative physician that plaintiff's impairment in concentration, persistence, or pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857, at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r, Soc. Sec. Admin., No. SAG–14–2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence, or pace does not prevent him from performing simple, spoken instructions and simple routine tasks).

Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence, or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step four analysis, and noted that his treating physicians found that he exhibited good attention, intact memory, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court. The Fourth Circuit reiterated its Mascio decision in Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016) in which it reinforced the obligation of the ALJ to give an adequate explanation of the findings made and to build a logical bridge from the impairments a claimant has to the RFC the ALJ determines a claimant maintains.

A mental impairment that causes a marked limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited," while a moderate impairment causes mental functioning to be fairly limited

"independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 C.

Dr. Sloop's opinion suggests that Andrea suffers from greater than moderate limitations in concentration, persistence, or pace. The ALJ acknowledged that Dr. Sloop found inattentiveness, poor concentration, distraction, poor remote and immediate memory, deficient recent memory, and that Andrea's verbal comprehension ability, working memory ability, proceeding speed ability, and ability to process simple or routine visual material were in the borderline range. Id. The ALJ also acknowledged that Dr. Sloop stated that Andrea would not be able to perform work activities consistently, would require fairly close supervision on simple and repetitive tasks, would have problems dealing with stress at work, could not work in a noisy, crowded environment, and could not work full-time. However, the ALJ gave Dr. Sloop's opinion little weight because of Andrea's frequent use of a cell phone interrupted his examination, which suggested inadequate effort during the examination; his results were inconsistent with the speech and language therapy records; the lack of medical treatment Andrea received after the examination; and the fact that Dr. Sloop explained that Andrea would continue to recover over time. R. 22.

Indeed, upon discharge from speech and language therapy in June 2013, Andrea could communicate in simple sentences and engage in mild conversation, had increased her cognitive abilities, and demonstrated good reading comprehension of broad details. Andrea continued to improve over time. In December 2014, Andrea had a normal mental status examination with clear and appropriate speech, logical thought process, good insight, fair judgment, and she was alert and oriented to person, place, and time. A mental examination of Andrea in January 2016 also was normal. Additionally, the ALJ found significant that Andrea performed many activities

of daily living, including preparing meals, driving, using her cell phone, performing household chores, watching movies, and using the internet. R. 17.

Substantial evidence supports the ALJ's decision to accord little weight to Dr. Sloop's opinion because Dr. Sloop's opinion is inconsistent with the record, which shows that Andrea had infrequent treatment, normal daily activities, and improvement in cognitive functioning. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017) (explaining that when the ALJ evaluates the opinions of non-treating physicians and non-medical sources, the ALJ must weigh three factors: "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion" (citing 20 C.F.R. § 404.1527(c)(3)–(5))).

The ALJ properly accounted for Andrea's moderate limitations in concentration, persistence, or pace in the hypothetical question posed to the vocational expert and the resulting RFC. At the administrative hearing, the ALJ asked the vocational expert:

> to assume that this person is able, for purposes of this hypothetical, to handle simple, routine, repetitive tasks involving no strict production quotas. And this person could interact with coworkers and supervisors on a frequent basis, but the work should be done in a well-spaced environment and involve no more than occasional public contact. For purposes of this hypothetical, this person would be able to sustain concentration toward a task for two-hour segments. These tasks should not involve significant reading or writing, and the person would be able to respond appropriately to infrequent and gradual change.

R. 58–59.

Andrea takes issue with the ALJ's limitation to jobs with "no strict production quotas," arguing that an ALJ does not account for a claimant's moderate limitations in concentration,

13

persistence, or pace simply by restricting a claimant to a nonproduction environment.[5] R. 58. The ALJ discussed the objective medical evidence of her mental impairments, noting that Andrea testified that she frequently forgets tasks and instructions and that the objective medical evidence showed deficient memory and concentration. The ALJ gave Andrea the "maximum benefit," R. 23, and accordingly limited her to "simple, routine, repetitive tasks involving no strict production quotas." R. 58. The ALJ satisfied Mascio in this regard. See Russo v. Astrue, 421 Fed. Appx. 184, 192 (3d Cir. 2011) (holding that hypothetical question to vocational expert that referenced an individual who "would not have a quota to fulfill" accounted for moderate difficulties in concentration, persistence, or pace); Rayman v. Comm'r, Soc. Sec. Admin., No. SAG-14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015) ("[T]he limitation to an environment with few changes and no production quotas assures that [the claimant] is not required to produce any particular volume of work-product and is not distracted or required to adapt to changes in the workplace. Thus, the ALJ accounted for any time that [the claimant] would be off-task due to his limited ability to maintain focus.").

Moreover, the ALJ's hypothetical question and the resulting RFC do not end with "no strict production quotas." R. 58. Rather, the ALJ asked the vocational expert to consider someone that could frequently interact with coworkers and supervisors, work in an open environment with limited contact with the public, concentrate on tasks that do not involve significant reading or writing for two hours at a time, and respond appropriately to infrequent or gradual workplace change. Andrea argues that the ALJ did not account for her ability to stay on task. However, the ALJ's restriction that Andrea can only stay on task for a maximum of two

---

[5] Andrea cites Burrow v. Colvin, No. 1:15CV163, 2016 WL 1258840 (M.D.N.C. Mar. 28, 2016); Cummings v. Colvin, No. 1:14CV465, 2016 WL 792433 (M.D.N.C. Feb. 26, 2016); Hagedorn v. Colvin, No. 2:12CV85–RLV, 2015 WL 4410288 (W.D.N.C. July 20, 2015); and Scruggs v. Colvin, No. 3:14–cv–00466–MOC, 2015 WL 2250890 (W.D.N.C. May 19, 2015).

hours accounts for pace. See Scott v. Berryhill, No. 1:16CV48, 2017 WL 500000, at *9 (M.D.N.C. Feb. 7, 2017) ("No reason exists to preclude an ALJ from (as here) formulating a multi-layered restriction which finds that a claimant can maintain [concentration, persistence, or pace] for two-hour periods (but not longer) provided the claimant also receives the benefit of a restriction to a non-production/non-quota-based work setting, all for the purpose of addressing a moderate limitation in [concentration, persistence, or pace]. To hold otherwise would effectively (and illogically) punish an ALJ for prescribing a more detailed accommodation of mental limitations in the RFC and hypothetical questions to the [vocational expert].").

When an ALJ finds that a claimant has moderate limitations in concentration, persistence, or pace, Mascio requires the ALJ to explain why that does or does not translate into a limitation in the RFC. See Mascio, 780 F.3d at 638. Mascio is clear that an ALJ cannot accommodate for these limitations by simply limiting a claimant to simple, unskilled work. Id. Here, the ALJ reviewed the medical records and opinions of record and explained the weight given to each opinion. The state agency physicians found Andrea had the mental limitations explained in the RFC. Further, where possible, the ALJ gave Andrea the maximum benefit to accommodate any mental limitations.

Accordingly, the ALJ's finding that Andrea did not suffer from greater than moderate limitations in concentration, persistence, or pace is supported by substantial evidence.

**The Development of the Record**

Andrea argues that the ALJ should have ordered a medical examination after according little weight to Dr. Sloop's opinion.

The regulations require the Commissioner to develop the claimant's "complete medical history for at least the 12 months preceding the month in which [the claimant files an]

application unless there is a reason to believe that development of an earlier period is necessary or unless [the claimant says that the] disability began less than 12 months before [the claimant filed the] application." 20 C.F.R. § 404.1512(b)(1). If the evidence submitted is consistent and sufficient to make a disability determination, the Commissioner will make the decision based on that evidence. See 20 C.F.R. § 404.1520b(a). The Commissioner need only seek more evidence if the provided evidence is insufficient to make a disability determination. See § 404.1520b(b).

A consultative examination may be obtained "when the record must be further developed to seek additional information or resolve inconsistencies." Saunders v. Colvin, No. 3:15cv006–HEH, 2015 WL 6503888, at *18 (E.D. Va. Oct. 27, 2015) (citing 20 C.F.R. § 404.1519)). The ALJ may pursue a consultative examination to obtain additional or obtained medical evidence where:

> (1) The additional evidence needed is not contained in the records of your medical sources; (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source; (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b). The decision whether to pursue a consultative exam "lies with the ALJ." Saunders, 2015 WL 6503888, at *18.

Here, there is nothing to suggest that the evidence of record was insufficient for the ALJ to render a disability determination. The ALJ had the benefit of the objective medical evidence, the opinions of the state agency physicians, and Andrea's own testimony. Andrea does not argue that a new consultative examination will materially assist the ALJ in making a disability

16

determination. Andrea simply argues that because the ALJ accorded limited weight to Dr. Sloop's consultative opinion, the ALJ was under a duty to order a new consultative examination. The regulations do not require such a result. The regulations require the ALJ to develop the record only when the record is insufficient to make a disability determination, such as when there are "'evidentiary gaps' that prejudice the rights of the claimant." Blankenship v. Astrue, 2012 WL 259952, at *13 (S.D. W. Va. Jan. 27, 2012) (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)). Because there are no gaps in the record that prejudice Andrea, I find that the record was sufficient for the ALJ to make a disability determination. Thus, the ALJ did not err in declining to order a second consultative examination.

**RECOMMENDED DISPOSITION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence. In this case, substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I recommend that the Commissioner's decision be **AFFIRMED**, the Commissioner's Motion for Summary Judgment be **GRANTED**, and Andrea's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 15, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge